UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ERICA HARRIS, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 3:16-CV-00252-JRG-HBG |
| v. ) | |
| ) | |
| CAROLYN JORDAN, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

On May 18, 2016, Erica Harris ("Petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging her 2011 Tennessee state court conviction for the sale of cocaine within 1000 feet of a school [Doc. 2]. Respondent has filed a response in opposition to the petition [Doc. 10] and a copy of the state court record [Doc. 8]. Petitioner has filed a reply to the response [Doc. 12]. For the following reasons, Petitioner's § 2254 petition will be **DENIED** and this action will be **DISMISSED WITH PREJUDICE**.

### I. PROCEDURAL HISTORY

On March 9, 2011, Petitioner was convicted by a Knox County jury of the sale and delivery of 0.5 grams or more of cocaine. *State v. Erica Harris,* No. E2012–01107–CCA–R3–CD, 2013 WL 1190826, at *3 (Tenn. Crim. App. Mar. 25, 2013), *perm. app. denied* (Tenn. Aug. 14, 2013). At sentencing, the trial court merged her convictions and sentenced her to serve seventeen years' incarceration. *Id*. On appeal, the Tennessee Court of Criminal Appeals ("TCCA") affirmed Petitioner's conviction and sentence. *Id*.

On November 12, 2013, Petitioner filed a pro se petition for post-conviction relief. *Harris v. State*, No. E2014-01893-CCA-R3-PC, 2015 WL 4366620, at *1 (Tenn. Crim. App. July 16,

2015). Counsel was appointed, and an amended petition was filed on February 26, 2014. *Id*. An evidentiary hearing was held on August 28, 2014, after which the post-conviction court denied the petition for post-conviction relief. *Id*. Petitioner filed a timely notice of appeal. *Id*. The TCCA affirmed the judgment of the post-conviction court on July 16, 2015, and the Tennessee Supreme Court ("TSC") denied Petitioner's application for permission to appeal on October 15, 2015. *Id*.

Thereafter, on May 18, 2016, Petitioner, proceeding pro se, filed the instant petition [Doc. 2]. This matter is now ripe for review.

## II. FACTUAL BACKGROUND

The TCCA summarized the facts of this case in its opinion on direct appeal as follows:

The defendant's conviction arose from a controlled drug purchase on August 24, 2009. At trial, 27–year–old Francis Brady, who testified that she had a history of drug abuse and drug-related criminal convictions, said that she became an informant for the Knoxville Police Department ("KPD") in 2007 after discussing it with an officer that attended her church. For the controlled buy involving the defendant, she was searched and fitted with a recording device before traveling to a residence on New Street in the Austin Homes community. She said that before the August 24, 2009 transaction, she had seen and interacted with the defendant "[a] good five or six times," that she was familiar with the defendant's apartment, and that she knew both of the defendant's sons, Darius and "Zonfo." Ms. Brady explained that she had arranged to purchase drugs from Zonfo on a previous occasion.

According to Ms. Brady, the plan on August 24, 2009, was for Ms. Brady to go to the defendant's residence and purchase crack cocaine from "just whoever was in the residence." When she arrived, the defendant let her into the apartment, and Ms. Brady described what happened next:

> I told her I needed a $100 worth of crack cocaine, and she had gone in the kitchen and brought back a DVD which had several rocks on it. And she had said that it was her son's dope that she didn't know if she could give it all to me, so she had got him on the phone and tried to call him and he didn't answer the phone.

At that point, the defendant told her she "could have all the dope that was on top of the ... DVD case." Ms. Brady said that she agreed because she "thought it was pretty big. It was a little over a hundred dollars worth." She said that the defendant gave

2

her "a bread wrapper off of bread," and Ms. Brady packaged the cocaine herself. Ms. Brady then gave the defendant $100.

An audio recording of the transaction was played for the jury over the defendant's objection. The recording, which was included in the record on appeal, is largely unintelligible. A woman other than Ms. Brady identified herself as "Erica" on the recording. Ms. Brady identified the defendant as the woman with whom she interacted during the recorded transaction.

During cross-examination, Ms. Brady said that the use of street names and false identities was common in the illegal drug trade.

KPD Officer Michael Geddings testified that he supervised Ms. Brady in her role as a confidential informant and explained the procedure for conducting controlled drug purchases. He explained that confidential informants are paid in cash for each controlled buy they complete if they are "not working off charges." Officer Geddings testified that on August 24, 2009, Ms. Brady made him aware of "drug activity at an apartment ... in the Austin Homes community," telling him that she had purchased drugs from a black male named Zonfo and that Zonfo's mother, Erica Harris, was present during the transaction. Although Ms. Brady did not know the apartment number, she did know the location. With the assistance of Google Earth, Officer Geddings was able to determine the address. Through further investigation, he confirmed that the address was the defendant's residence. Officer Geddings testified that he showed the defendant's driver's license photo to Ms. Brady, who confirmed that the defendant was the woman named Erica that Ms. Brady knew to live in the New Street apartment. Officer Geddings testified that he fitted Ms. Brady with recording equipment and "instructed [her] to attempt to purchase a hundred dollars worth of crack cocaine from ... the apartment ... that she had identified and that we had identified as 1116 West New Street, apartment number 295." He described what happened upon their arrival at 1116 West New Street:

> [Ms. Brady] exited and then walked into the apartment through the front door, was in there approximately a little over two minutes and then exited through the same door. At which time, she got back into the vehicle, handed me the crack cocaine that had been purchased and then we drove back to the police department.

At the police department, Ms. Brady was searched and instructed to provide a written statement while Officer Geddings weighed, photographed, and field tested the drugs for the presence of cocaine. After the field test was positive, Officer Geddings placed the drugs into an evidence envelope and sent it to the Tennessee Bureau of Investigation ("TBI") laboratory for testing. Officer Geddings identified the defendant's voice on the audio recording of the transaction after noting his familiarity with it.

During cross-examination, Officer Geddings testified that information gleaned during his investigation led him to believe that Tramell Harris, the defendant's son, was in charge of all drug sales taking place in the residence.

KPD Officer Joshua Schaffer testified that he assisted Officer Geddings in the execution of a search warrant at the defendant's residence on September 15, 2009. During the search, Officer Schaffer detained the defendant. After he provided her with *Miranda* warnings, the defendant told Officer Schaffer that "the crack she had sold ... was her son's and that her son was the one that obtained the crack cocaine and that if he was not there on that occasions she sold." Officer Schaffer conceded that the defendant did not specify a time frame for when she sold drugs.

TBI Agent and Forensic Scientist Carl Smith testified that he tested the rock-like material sent by Officer Geddings and determined it to be .9 grams of crack cocaine.

Knoxville Geographic Information Systems ("KGIS") Analyst Garrett McKinney testified that, at the request of the State, he utilized geographic data available from various governmental entities to create a map showing the defendant's residence and its proximity to the Green Magnet Elementary School. He also highlighted a 1,000 foot "buffer" from the school's parcel boundary. Using available data, Mr. McKinney calculated the distance between the "exterior parcel boundary of the Green Magnet School" and the defendant's apartment as 597 feet.

During cross-examination, Mr. McKinney acknowledged that he did not personally measure the distance between the defendant's residence and the school's boundary and that all KGIS maps come with a disclaimer that "KGIS makes no representation or warranty as to the accuracy of this map and its information to fitness for any— or for use." He said that it was not possible that the measurements were more than 400 feet wrong.

Following Mr. McKinney's testimony, the State rested, and the defendant presented the testimony of the defendant's son, Tramell Harris. Mr. Harris testified that on August 24, 2009, he lived at 1116 New Street with the defendant, his siblings, and his mother's husband. The defendant, he said, held two jobs, one with "GC Service" and one as a care giver for an elderly woman, while he sold cocaine out of the New Street residence. Mr. Harris acknowledged that he had pleaded guilty in juvenile court to the possession of cocaine. Mr. Harris testified that his aunt, Andrea Johnson, stayed with the family in August 2009 and that Ms. Johnson used and sold crack cocaine.

During cross-examination, Mr. Harris acknowledged that he sold crack from the residence the entire time he lived there and that, although his aunt sold crack cocaine on occasion, he was the primary source of cocaine in the household. He said that he kept the crack cocaine in a closet, sometimes the closet in his bedroom and sometimes the "downstairs" closet. Mr. Harris conceded that execution of a search warrant at the home on September 15, 2009, resulted in the discovery of

cocaine in the defendant's bedroom closet. Mr. Harris said that he placed the cocaine in his mother's closet because he "was leaving." Mr. Harris acknowledged that he had no personal knowledge whether the defendant sold crack cocaine to Ms. Brady on August 24, 2009, because he was not home. Mr. Harris conceded that the defendant knew that he sold drugs, but he claimed that the defendant tried to stop him.

Following this testimony, the defense rested, and the State presented rebuttal testimony from the defendant's sister, Andrea Johnson Drury, and Ms. Brady. Ms. Drury denied any involvement in the sale of cocaine. She said that she had seen Ms. Brady on those occasions that Ms. Brady purchased drugs from the defendant and Mr. Harris. Ms. Brady denied having purchased drugs from Ms. Drury.

From this evidence, the jury convicted the defendant as charged of the sale and delivery of more than .5 grams of cocaine. The trial court merged the convictions and imposed a single sentence of 17 years' incarceration. Following the denial of her timely but unsuccessful motion for new trial, the defendant filed a timely notice of appeal.

*Harris*, 2013 WL 1190826, at *1–3.

The opinion of the TCCA affirming the decision of the post-conviction court contains a recitation of the evidence presented at the evidentiary hearing held by the post-conviction court and summarizes the testimony heard from Petitioner, her trial counsel, and numerous other witnesses in that proceeding. *Harris*, 2015 WL 4366620, at *1–4. To the extent the facts and evidence from Petitioner's trial and post-conviction relief hearing are relevant to the claims raised by Petitioner in her § 2254 petition, they will be addressed below in the analysis of those specific claims.

## III. STANDARD OF REVIEW

A state prisoner is entitled to habeas corpus relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, which amended § 2254, sets forth "an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007). By this standard,

5

when a state court adjudicates a claim on the merits, habeas relief is available only if the adjudication of that claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court's ruling is an "unreasonable application of" clearly established federal law if the state court identifies the correct governing legal principle from Supreme Court precedent but unreasonably applies it to the facts of the particular state prisoner's case. *Id*. at 407. In making this determination, the habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id*. at 411.

Under the AEDPA, a habeas petitioner must "'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). This standard is "difficult to meet," "highly deferential," and "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington*, 562 U.S. at 102; *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

IV.  ANALYSIS

Petitioner's § 2254 petition raises three grounds for habeas relief: (Claim 1) ineffective assistance of trial counsel; (Claim 2) insufficient evidence; and (Claim 3) improper and excessive sentence [Doc. 2]. Respondent asserts that none of Petitioner's claims have been fairly or adequately presented to the highest available state court in satisfaction of 28 U.S.C. § 2254(b)'s exhaustion requirement and argues that they are now barred from presentation to the state courts by Tennessee's statute of limitation under Tenn. Code. Ann. § 40-30-102(a) and the "one petition" limitation of § 40-30-102(c) [Doc. 10 at 2].

In her reply, Petitioner argues that she "could not exhaust the issue surrounding the excessive sentencing guidelines for offenses of drug sales in a school zone" [Doc. 12 at 1]. Petitioner explains: "Under Tennessee Legislation, House Bill No. 1704 the bill was originally wrote [sic] to have an amendment of [T.C.A.] §39-17-432 to a requirement of thirty-three percent (33%) of the sentence to serve in lieu of the one-hundred percent (100%) that currently is required to be served if one is sentenced under this statute" [*Id*.]. Petitioner asserts that this "Tennessee bill was tabled until the January 2017 vote" [*Id*.]. Petitioner did not mention Claim 1 or Claim 2 in her reply or argue against Respondent's assertion that those two claims are procedurally barred.

### A.  Procedural default

Before a federal court may review a federal claim raised in a habeas petition, it first must determine whether the petitioner has exhausted the remedies available in state court. *See* 28 U.S.C. § 2254(b)(1). If a federal habeas claim has not been presented to a state court for adjudication, then it is unexhausted and may not properly serve as the basis of a federal habeas petition. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

The exhaustion "requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's

claims." *Wilson v. Mitchell*, 498 F.3d 491, 498–99 (6th Cir. 2007) (quoting *Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir. 2001)). Under Tennessee Supreme Court Rule 39, a Tennessee prisoner exhausts a claim by raising it before the TCCA. *See Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003).

A federal court will not review claims that were not entertained by the state court due to the petitioner's failure (1) to raise those claims in the state courts while state remedies were available, or (2) to comply with a state procedural rule that prevented the state courts from reaching the merits of the claims. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006). A petitioner who fails to raise a federal claim in the state courts and who is now barred by a state procedural rule from returning with the claim to those courts has committed a procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). A procedural default forecloses federal habeas review, unless the petitioner can show cause to excuse the failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation, or that a fundamental miscarriage of justice would result from failure to review the claim, as she is actually innocent of the offense. *Id*. at 749-50.

**B. Application**

As previously stated, Petitioner raises three grounds for habeas relief. First, Petitioner claims her conviction and sentence are void because her trial counsel was ineffective. Specifically, Petitioner lists the following three sub-claims:

1. Trial counsel failed to object to the execution of the search warrant for Plaintiff's home;

2. Trial counsel failed to object to the testimony of a "known criminal informant;" and

3. Trial counsel failed to object to the violation of Petitioner's Fourth, Fifth, and Fourteenth Amendment rights, including the right against self-incrimination

[Doc. 2 at 6]. Next, Petitioner claims her convictions are not supported by sufficient evidence [Doc. 2 at 7]. Lastly, Plaintiff claims her sentence is improper and excessive [*Id.* at 9].

After a review of the record, this Court finds that none of Petitioner's federal habeas claims were presented to TCCA. Furthermore, Petitioner is now precluded from raising any of these claims in a state post-conviction proceeding, as the time for seeking such relief long since has passed. *See* Tennessee Code Annotated § 40-30-102(a) and (b); *Seals v. State*, 23 S.W.3d 272, 276 (Tenn. 2000). Accordingly, Petitioner's claims are defaulted and cannot be reviewed absent a showing of cause for failure to comply with the procedural rule and actual prejudice resulting from the alleged violation, or upon a demonstration of actual innocence. *See Coleman*, 501 U.S. at 750. Here, Petitioner has asserted no cause for not raising the first two issues on direct appeal, and for her claim of excessive sentencing, she claims only that "the state sentencing should be parallel to the Federal Sentencing Guidelines" [Doc. 2 at 9]. Petitioner's conclusory argument for identical state and federal sentencing guidelines is insufficient to satisfy the "cause and prejudice" standard.

Moreover, Petitioner cannot establish "actual innocence" as an exception to the procedural default rule, as the exception requires "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To establish actual innocence, petitioner must demonstrate that it is more likely than not that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995); *see also House v. Bell*, 547 U.S. 518, 538 (2006). Petitioner has not made such a showing, and hers is not the "extraordinary case" that would allow review of her claims in this collateral proceeding despite the presence of procedural default. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Accordingly, because Petitioner failed to exhaust her three asserted claims by fully and fairly presenting them to the state court, and she now is precluded from doing so, those claims have been procedurally defaulted. And since Petitioner has established neither cause or prejudice to excuse her procedural default of those claims, nor has she established her actual innocence, all three claims will be **DISMISSED.**

## V. CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before she may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

## VI. CONCLUSION

For the reasons set forth above, Petitioner's § 2254 petition [Doc. 2] will be **DENIED** and this action will be **DISMISSED**. A certificate of appealability from this decision will be **DENIED**.

Further, the Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE